# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUDITH CABASAG ROGERS,            )
                                  )
                    Plaintiff,    )
                                  )
          v.                      )        1:20CV467
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social Security,  )
                                  )
                    Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Judith Cabasag Rogers, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entries 11, 14 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 16, 18; see also Docket Entry 17 (Plaintiff's Brief); Docket Entry 19 (Defendant's Memorandum); Docket Entry 20 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 175-80), alleging disability since October 1, 2016 (see Tr. 179).[1] Following denial

---

[1] Plaintiff's application for SSI does not appear in the record; however, the record contains two different applications for DIB – one dated January 9, 2017
(continued...)

of those applications initially (Tr. 32-49, 88-91) and on reconsideration (Tr. 50-87, 95-112), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 113-14). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 553-605.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 171-72, 278-79), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease, bilateral carpal tunnel syndrome [("CTS")] status post bilateral release procedures, left knee pain, and depression.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] (...continued)
(Tr. 175-78), that alleged an onset date of July 16, 2016 (see Tr. 175), and one dated May 16, 2017 (Tr. 179-80), which asserted disability onset on October 1, 2016 (see Tr. 179). Subsequent administrative records reflect the second onset date of October 1, 2016. (See Tr. 10, 50, 68.)

. . .

5.  .  .  .  [Plaintiff] has the residual functional
capacity to perform sedentary work . . . except
[Plaintiff] would require an assistive device such as a
cane to ambulate. Moreover, [Plaintiff] can occasionally
balance, stoop, kneel, crouch and crawl, can occasionally
climb ramps and stairs, but cannot climb ladders, ropes
or scaffolds. Further, [Plaintiff] can frequently handle
and finger with bilateral upper extremities, but must
avoid work place hazards, such as unprotected heights and
moving mechanical parts. Finally, [Plaintiff] is further
limited to unskilled, simple routine, repetitive tasks
[("SRRTs")].

. . .

6.  [Plaintiff] has no past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from October 1, 2016, through
the date of this decision.

(Tr. 12-21 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

3

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

---

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, (continued...)

7

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ committed a reversible error by failing to conduct a proper function-by-function analysis of [Plaintiff's] exertional capacities and by failing to explain how the evidence supports the hearing decision's [RFC] assessment" (Docket Entry 17 at 3 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 20 at 1-12); and

2) "[t]he ALJ committed a reversible error by failing to consider greater handling and fingering restrictions from [Plaintiff's CTS] during the first 12 months after her alleged onset date of disability" (Docket Entry 17 at 12 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 19 at 4-16.)

### 1. Function-by-Function Analysis

Plaintiff's first assignment of error asserts that "[t]he ALJ committed a reversible error by failing to conduct a proper function-by-function analysis of [Plaintiff's] exertional capacities and by failing to explain how the evidence supports the hearing decision's [RFC] assessment."  (Docket Entry 17 at 3 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 20 at 1-

---

[5] (...continued)
review does not proceed to the next step.").

12).)  In particular, Plaintiff maintains that Social Security
Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI:</u>
<u>Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL
374184 (July 2, 1996) ("SSR 96-8p"), "explicitly requires the ALJ
to address all seven exertional strength capacities of [Plaintiff]"
in the RFC, including "'[s]itting, standing, walking, lifting,
carrying, pushing, and pulling,'" with "'[e]ach function . . .
considered separately.'"  (Docket Entry 17 at 4 (quoting SSR 96-8p,
1996 WL 374184, at *5).)  Plaintiff further insists out that "[t]he
ALJ's RFC assessment is inadequate to establish that [Plaintiff]
retains the ability to perform the sedentary occupations cited [by
the ALJ] at step five of [the SEP] because it does not specify how
many hours of an 8-hour workday she can sit."  (<u>Id.</u> at 7 (citing
Tr. 15).)  According to Plaintiff, "[t]he United States Court of
Appeals for the Fourth Circuit has held that it is a reversible
error for an ALJ to fail to explain how the evidence supports a
finding that [a] claimant can perform the functional requirements
of an exertional level of work."  (<u>Id.</u> (citing <u>Woods v. Berryhill</u>,
888 F.3d 686, 694 (4th Cir. 2018)).)  Those contentions fail to
warrant relief.

RFC measures the most a claimant can do despite any physical
and mental limitations.  <u>Hines</u>, 453 F.3d at 562; 20 C.F.R.
§§ 404.1545(a), 416.945(a).  An ALJ must determine a claimant's
exertional and non-exertional capacity only after considering all
of a claimant's impairments, as well as any related symptoms,

9

including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted).

As to the role of the function-by-function analysis in the RFC determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, the Fourth Circuit stated "that a per se rule is

10

inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, contrary to Plaintiff's argument (see Docket Entry 17 at 3-12), the ALJ's decision sufficiently addresses the sitting restriction to permit meaningful review by the Court.

Plaintiff's contention that the ALJ's decision violated SSR 96-8p and Woods because the RFC "does not specify how many hours of an 8-hour workday she can sit" (Docket Entry 17 at 7 (citing Tr. 15)) falls short. The ALJ found that Plaintiff retained the RFC to perform sedentary work "as defined in 20 CFR 404.1567(a) and 416.967(a)" (Tr. 15 (emphasis added)), which regulations define sedentary work to involve "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Those regulations further emphasize that, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties," and that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id.

11

(emphasis added). Moreover, long-standing SSA policy further expounds on the regulatory definition of sedentary work as follows:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983) ("SSR 83-10") (emphasis added). The ALJ's citation of Sections 404.1567(b) and 416.967(a) thus permits the Court to ascertain the sitting restriction the ALJ intended to adopt in the RFC, i.e., that Plaintiff remained capable of sitting for up to six hours in an eight-hour workday. See Hacker v. Saul, No. 5:20CV132, 2021 WL 852197, at *3, *5 (N.D.W. Va. Feb. 18, 2021) (unpublished) (finding no error in ALJ's expression of RFC as "sedentary work as defined in 20 C.F.R. § 416.967(a)," where court could look to SSA's definition of sedentary work to determine exertional limits of such work"), recommendation adopted, 2021 WL 851879 (N.D.W. Va. Mar. 5, 2021) (unpublished).[6]

---

[6] Plaintiff contends that SSR 83-10 "does not clarify" the sitting limitation intended by the ALJ's RFC, "because the ALJ did not find in the RFC assessment that [Plaintiff wa]s capable of performing sedentary work as defined in SSR 83-10." (Docket Entry 17 at 8-9 (citing Tr. 15); see also Docket Entry 20 at 5-6.) According to Plaintiff, "SSR 83-10 therefore cannot be used to incorporate by reference a finding in the RFC assessment that [Plaintiff] can sit for 6 hours per workday." (Docket Entry 17 at 9.) Plaintiff cites no authority precluding courts from looking to long-standing SSA policies regarding the exertional
(continued...)

12

Plaintiff nevertheless argues that the ALJ's statement that Plaintiff's "'ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations' . . . establishes that the ALJ did not believe [Plaintiff] to be capable of performing all of the exertional requirements cited in the regulatory definition of sedentary work." (Docket Entry 17 at (quoting Tr. 20); see also Docket Entry 20 at 6 (noting ALJ's finding that "'the [RFC] used in this decision reduce[d Plaintiff] to performing a reduced range of sedentary work'" (quoting Tr. 19).) In that regard, Plaintiff disagrees with the Commissioner's assertion that the ALJ's statement regarding "additional limitations" reducing the range of sedentary work Plaintiff could perform (Tr. 20) does not "refer[] to any restrictions of exertional capacity, but [instead] refers to several other, mainly nonexertional, limitations included in the

_____

[6] (...continued)
requirements of sedentary work to construe the restrictions intended by an ALJ's RFC (see id. at 8-9), and cases hold to the contrary, see, e.g., Daniels v. Saul, No. 2:20CV230, 2021 WL 667945, at *7 (S.D.W. Va. Jan. 26, 2021) (unpublished) ("SSR 83-10 specifies that a 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,' and '[s]itting may occur intermittently during the remaining time[' and, t]hus, by finding that [the c]laimant could perform light work without any additional standing, walking, or sitting limitations, the ALJ concluded that [the c]laimant could stand and walk for approximately six hours in an eight-hour workday with intermittent sitting." (internal citation omitted)), recommendation adopted, 2021 WL 665534 (S.D.W. Va. Feb. 19, 2021) (unpublished); see also Harrison v. Colvin, No. 1:10CV18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) (unpublished) (Eagles, J.)(relying on the applicable regulations and SSR 83-10 to hold that, "by finding that [the plaintiff] was capable of performing light work, the ALJ implicitly found that she was capable of standing or walking for approximately six hours in an eight-hour work day"). Accordingly, the Court should use SSR 83-10 in this case to help ascertain the ALJ's sitting restriction in the RFC.

ALJ's RFC assessment." (Docket Entry 20 at 6 (citing Docket Entry 19 at 11).) According to Plaintiff, "[Social Security Ruling 96-9p, <u>Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work</u>, 1996 WL 374185 (July 2, 1996) ('SSR 96-9p')], which sets forth the [SSA]'s standards regarding an RFC 'for less than a full range of sedentary work,' provides that the additional limitations of the ALJ's RFC assessment do not significantly erode the unskilled sedentary occupational base." (<u>Id.</u> at 7 (citing SSR 96-9p, 1996 WL 374185, at *7-8.) Thus, Plaintiff argues, "[w]hen the ALJ stated that the RFC assessment 'reduce[d Plaintiff] to performing a reduced range of sedentary work' and that [Plaintiff's] ability to perform substantially all of the requirements of sedentary work 'ha[d] been impeded by additional limitations,' the only logical interpretation is that her ability to perform the exertional requirements of sedentary work is restricted." (<u>Id.</u> at 9 (quoting Tr. 19, 20).)

Plaintiff's argument relies upon an unreasonable interpretation of the ALJ's use of the phrase "reduced range of sedentary work" (Tr. 19). Indeed, SSR 96-9p provides that several of the ALJ's non-exertional restrictions in this case could erode the unskilled, sedentary occupational base. For example, although that Ruling provides that, "if a medically required hand-held assistive device is needed <u>only for prolonged ambulation</u>, . . . the unskilled sedentary occupational base will not ordinarily be

14

significantly eroded," SSR 96-9p, 1996 WL 374185, at *7 (emphasis added), the ALJ here included a requirement in the RFC that Plaintiff use an assistive device for <u>all</u> ambulation (<u>see</u> Tr. 15). Additionally, SSR 96-9p explains that, "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base," SSR 96-9P, 1996 WL 374185, at *7, and the ALJ in this case restricted Plaintiff to occasional balancing on <u>any</u> terrain (<u>see</u> Tr. 15). Thus, the ALJ properly consulted with a VE to determine the impact of those nonexertional restrictions on the unskilled, sedentary occupational base. (<u>See</u> Tr. 599-602.)

In contrast, <u>no</u> basis exists to assume the ALJ found Plaintiff capable of fewer than six hours of sitting by referencing a reduced range of sedentary work – e.g., no treating, consulting, or non-examining medical source of record opined that Plaintiff's impairments reduced her sitting capacity to fewer than six hours in an eight-hour workday. Furthermore, although Plaintiff deems the ALJ's RFC determination "inconsistent with [Plaintiff's] hearing testimony[ r]egarding her ability to sit" (Docket Entry 17 at 6 (citing Tr. 585-87)), the ALJ acknowledged Plaintiff's "report[] that she c[ould] sit for an hour, but then her back start[ed] to hurt" (Tr. 15), but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's]

15

decision" (Tr. 16). The ALJ supported that finding with the following analysis:

> In sum, the longitudinal evidence of record does not support [Plaintiff]'s allegations concerning the intensity, persistence, and limiting effects of her symptoms. While she has a history of reporting low back pain and depression, she has had only routine ongoing treatment consisting of medication management. . . . [Plaintiff] stated she has no problems with her personal care, she takes care of her children, and does household chores. She goes grocery shopping. [Plaintiff] is working from home and is home schooling her six year old son.

(Tr. 19 (internal parenthetical citation omitted).) Notably, Plaintiff has not challenged the ALJ's analysis of Plaintiff's subjective symptom reporting. (See Docket Entries 17, 20.)

In light of the foregoing analysis, Plaintiff's first assignment of error falls short.

## 2. Handling and Fingering Restrictions

Lastly, Plaintiff asserts that "[t]he ALJ committed a reversible error by failing to consider greater handling and fingering restrictions from [Plaintiff's CTS] during the first 12 months after her alleged onset date of disability." (Docket Entry 17 at 12 (bold font and single-spacing omitted).) More specifically, Plaintiff contends that "[t]he ALJ's statements indicate that he based the RFC assessment of frequent handling and fingering ability solely on the significant improvement in [CTS] symptoms that occurred after [Plaintiff's CTS] release surgeries," but that "the orthopedic treatment notes . . . establish that

16

[Plaintiff]'s bilateral [CTS] symptoms were significantly worse before the [CTS] release surgeries" and thus that Plaintiff's "ability to use her hands to handle and finger necessarily had to be more limited prior to the surgeries." (Id. at 15.) According to Plaintiff, "[e]ven though both [CTS] release surgeries took place before the end of th[e] 12-month period following her onset date, [she] required a brief period of recovery after the surgeries to utilize range of motion exercises in an effort to regain full functional use of her hands until she was finally released from ongoing care by her surgeon on October 20, 2017." (Id. at 16.) Plaintiff therefore argues that, "for the 12-month period between her October 1, 2016, alleged onset date . . . [and] her October 20, 2017, release from ongoing care, the only reasonable conclusion to draw from the medical evidence is that [Plaintiff] was unable to engage in frequent handling and fingering during that period." (Id.)

Plaintiff attempts to show the prejudicial nature of that asserted error by the ALJ by pointing out that "all three sedentary jobs that the ALJ found [Plaintiff] capable of performing of step five of [the SEP] require frequent handling" (id. (citing Dictionary of Occupational Titles ("DOT"), No. 713.687-018 ("Final Assembler"), 1991 WL 679271 (G.P.O. 4th ed. rev. 1991), DOT, No. 209.567-014 ("Order Clerk, Food and Beverage"), 1991 WL 671794, DOT, No. 205.367-014 ("Charge-Account Clerk"), 1991 WL 671715)), as well as that "[t]wo of the jobs [] require frequent fingering" (id.

17

at 17 (referencing DOT, No. 713.687-018 ("Final Assembler"), 1991 WL 679271, DOT, No. 209.567-014 ("Order Clerk, Food and Beverage"), 1991 WL 671794)). Thus, Plaintiff argues, if she remained capable of only occasional handling and fingering prior to her CTS release surgeries, "this would render the ALJ's hearing decision unsupported by substantial evidence for the first 12 months after [Plaintiff's] alleged onset date." (Id.) None of those contentions carries the day.

As an initial matter, as the Commissioner points out (see Docket Entry 19 at 15), the ALJ did not base his finding that Plaintiff remained capable of frequent handling and fingering solely on her post-surgical improvement in CTS symptoms. Rather, the ALJ discussed Plaintiff's CTS treatment throughout the relevant period, and that discussion supports the ALJ's finding that Plaintiff's bilateral CTS (whether considered before her first release surgery, in the interim between the two release surgeries, or post-surgeries) did not prevent her from performing frequent handling and fingering. (See Tr. 16.)

With regard to evidence pre-dating Plaintiff's first release surgery on July 11, 2017 (see Tr. 389-90), the ALJ noted that, on November 1, 2016, Plaintiff "complained of chronic and worsening bilateral wrist pain," and that her orthopedist "prescribed wrist splints" (Tr. 16 (citing Tr. 299)). Plaintiff did not seek further treatment of her CTS until May 8, 2017, when, as the ALJ observed, "a physical examination noted full range of motion in [Plaintiff's]

18

wrist, and negative Tinel's sign and negative Finklestein's test."
(Id. (citing Tr. 328).) The ALJ additionally noted that,
approximately five weeks after her first CTS release surgery, but
prior to her second such surgery on September 19, 2017 (see Tr.
376-77), Plaintiff "stat[ed] she was doing well, and note[d]
improvement in her left hand" (Tr. 16 (citing Tr. 381)).
Similarly, the ALJ remarked that, approximately one month following
her second release surgery, Plaintiff "reported she was doing well,
noted improvement in the hand, reported that she d[id] not have any
significant pain with the hand, and did not have any complaints."
(Id. (citing Tr. 371).) Thus, excepting brief periods of recovery
following each release surgery, that evidence would not have
compelled the ALJ to restrict Plaintiff to only occasional handling
and fingering from October 1, 2016, to October 1, 2017.

    Moreover, the ALJ's evaluation of Plaintiff's subjective
symptom reporting supports the ALJ's finding that, despite
Plaintiff's severe bilateral CTS (see Tr. 13), she could perform
sedentary work involving frequent handling and fingering (see Tr.
15). In that regard, the ALJ expressly acknowledged that Plaintiff
"alleg[ed] disability due to pain in her . . . wrists," as well as
that she "reported numbness in her hands" and "reli[ance] on her
husband to help her around the home, care for their child, and
prepare meals." (Tr. 15.) However, as discussed above, the ALJ
found that Plaintiff's "statements concerning the intensity,
persistence and limiting effects of [her] symptoms [we]re not

19

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 16) and, significantly, Plaintiff did not challenge that finding by the ALJ (see Docket Entries 17, 20).

The ALJ's consideration and weighing of the opinion evidence further supports the RFC's restriction to <u>frequent</u> handling and fingering. The ALJ accorded "partial weight" (Tr. 18) to the opinions of the state agency medical consultants, who acknowledged that Plaintiff alleged numbness and/or pain in her arms (see Tr. 40, 43, 56, 59, 62, 74, 77, 80), but assessed <u>no</u> limitations on Plaintiff's ability to handle and finger (see Tr. 41-43, 60-62, 78-80). The ALJ explained that he found the consultants' opinions "relatively consistent with generally benign objective imaging and physical examinations existing at the time of their review," but that, "<u>out of an abundance of caution</u>, [he] provided for greater limitations than those set forth by the [consultants]." (Tr. 18 (emphasis added).) Thus, the ALJ afforded Plaintiff's subjective symptom reports the benefit of the doubt in restricting her to even frequent handling and fingering.

In short, Plaintiff's second issue on review fails as a matter of law.

20

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 16) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

June 1, 2021